# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| **DAYS INNS WORLDWIDE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CAUSE NO.: 1:08-CV-124** |
| | ) | |
| **EXHIBIT CHICAGO, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

## I.  INTRODUCTION

This matter is before the Court on Plaintiff Days Inns Worldwide, Inc.'s ("DIW") motion for default judgment and damages against Defendants Exhibit Chicago, Inc. ("Exhibit"), and Khursheed Shaikh.  (Docket # 14.)  Following the Clerk's Entry of Default against the Defendants (Docket # 14), the District Court Judge, Theresa L. Springmann, entered an Order pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Northern District of Indiana Local Rule 72.1, referring this case to the undersigned Magistrate Judge to prepare a report and recommendation.  (Docket # 16.)

Accordingly, this Report and Recommendation addresses whether a default judgment should be entered under Federal Rule of Civil Procedure 55(b), and if so, what damages should be awarded.

## II.  PROCEDURAL BACKGROUND

DIW filed its complaint against the Defendants on May 7, 2008.  (Docket # 1.)  DIW alleges that Exhibit breached its License Agreement, dated January 11, 2005, ("the License Agreement") with DIW and continues to use the Days Inn trademarks in violation of both the

License Agreement and the Lanham Act, 15 U.S.C. § 1051 *et seq*. DIW further alleges that Shaikh is liable for Exhibit's obligations under the terms of a guaranty.

The Defendants were served on May 8 and May 15, 2008. (Docket ## 6, 7, 8, 11.) Although the deadlines for Exhibit's and Shaikh's answers were May 28, and June 4, 2008, respectively (*see* Docket ## 6, 11), neither filed an answer. Consequently, on June 30, 2008, DIW filed a motion for the Clerk's Entry of Default (Docket # 12), and the Clerk entered a Default on July 9, 2008, against the Defendants (Docket # 13).

DIW filed a motion for default judgment and damages on December 5, 2008, including an affidavit from Kelly Krug, Manager of Compliance for DIW. (Docket ## 14, 15.) District Judge Springmann entered an order referring the matter to the undersigned Magistrate Judge on December 17, 2008. (Docket # 16.)

On December 23, 2008, the Court conducted a telephone conference at which DIW appeared by counsel. (Docket # 18.) Counsel for DIW was ordered to file proposed findings of fact and conclusions of law, as well as a supplemental affidavit from Kelly Krug clarifying the present value of actual damages. (Docket # 23.) DIW filed its proposed findings of fact and conclusions of law on January 23, 2009, and the supplemental affidavit on February 4, 2009. (Docket ## 21, 25.)

**III. STANDARD FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT**

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A default means that the factual allegations of the complaint (except those relating to the amount of damages) are to be taken as true and can no

longer be contested. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989).

Because the default only goes to the well-pled facts of the complaint, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit to mere conclusions of law. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d. ed. 1998); *see also Black*, 22 F.3d at 1399 ("The entry of a default order does not, however, preclude a party from challenging the sufficiency of the complaint." (citation omitted)). Thus, following an entry of default, the court must go on to decide if the factual allegations of the plaintiff's complaint and the evidence of record support the plaintiff's claim.

Federal Rule of Civil Procedure 55(b) sets forth the procedure for entering a default judgment. If the claim is for a sum certain or a sum that is ascertainable by computation, "the clerk – on the plaintiff's request, with an affidavit showing the amount due – must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing . . . ." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "A judgment by default may not be entered without a hearing on damages unless the amount claimed is liquidated or capable of ascertainment from definite figures contained in documentary evidence or detailed affidavits." *Tate v. Milwaukee County Jail*, No. 06-C-670, 2009 WL 151493, at *2 (E.D. Wis. Jan. 20, 2009) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).

Accordingly, the record supports the following findings of fact and conclusions of law.

# IV.  FINDINGS OF FACT[1]

On approximately April 25, 2001, DIW entered into a license agreement with Shiv-Darshan, Inc. ("Shiv-Darshan"), for the operation of a sixty-two room guest lodging facility located at 2998 West Park Drive, Huntington, IN 46750, Site No. 6978-83616-4 (the "Facility"). (Krug Aff. ¶ 5.)  About four years later, on January 11, 2005, DIW entered into a new License Agreement with Exhibit for the operation of the Facility first granted to Shiv-Darshan.  (Krug Aff. ¶ 6.)  Pursuant to this License Agreement, Exhibit assumed and obligated itself to perform any and all of Shiv-Darshan's obligations under the prior agreement, including the obligation to operate a Days Inn guest lodging facility for a fifteen year term, during which time it was permitted to use the Days Inn marks in association with the operation and use of the Facility as part of DIW's franchise system.  (Krug Aff. ¶¶ 6, 7.)

Under Section 7 and Schedule C of the License Agreement, Exhibit was required to make certain periodic payments to DIW for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively "Recurring Fees").  (Krug Aff. ¶ 8.)  Exhibit agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility, and to allow DIW to examine, audit, and make copies of the entries in these books, records, and accounts. (Krug Aff. ¶ 9.)  Section 7.3 of the License Agreement provides that interest is payable on any past due amount payable to DIW under the License Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid.  (Krug Aff. ¶ 10.)

---

[1] Any finding of fact deemed to be a conclusion of law is incorporated as such, and any conclusion of law deemed a finding of fact is also incorporated as such.

The License Agreement and its accompanying document, the Indiana Addendum, also provide terms in the event that the License Agreement is terminated. Paragraph 4 of the Indiana Addendum provides that after termination, Exhibit continues and remains liable to DIW for any and all damages which DIW sustained or may sustain by reason of any defaults and breach of the License Agreement until the end of the term. (Krug Aff. ¶ 11.) Furthermore, Section 13 of the License Agreement provides that after termination Exhibit immediately cease using all of the Days Inn marks. (Krug Aff. ¶ 12.) Exhibit also agreed, in Section 17.4, that the non-prevailing party would pay all costs and expenses, including reasonable attorneys' fees, that the prevailing party incurred in enforcing the License Agreement or in collecting amounts owed. (Krug Aff. ¶ 13.)

Also on January 11, 2005, DIW and Exhibit executed a Satellite Connectivity Services Addendum (the "Services Addendum"), in which Exhibit agreed that in the event of termination, it would pay damages to DIW in the amount of $1,000.00. (Krug Aff. ¶¶ 14, 15.)

In addition, effective as of the date of the License Agreement, Shaikh provided DIW with a Guaranty of Exhibit's obligations under the License Agreement ("Guaranty"). (Krug Aff. ¶ 16.) Pursuant to the terms of the Guaranty, Shaikh agreed that upon a default under the License Agreement, he would immediately make each payment and perform or cause Exhibit to perform each of its unpaid or unperformed obligations under the License Agreement. (Krug Aff. ¶ 17.) Shaikh agreed to pay the costs, including reasonable attorneys' fees, incurred by DIW in enforcing its rights or remedies under the Guaranty or the License Agreement. (Krug Aff. ¶ 18.)

Exhibit unilaterally terminated the License Agreement effective October 31, 2007. (Krug Aff. ¶ 19.) By letter dated November 7, 2007, DIW explained Exhibit's post-termination

obligations under the License Agreement, including payment of damages of $70,362.90 and outstanding Recurring Fees, through the date of termination, estimated at the time to equal $28,293.47. (Krug Aff. ¶ 24.) The letter also informed Exhibit that it must "de-identify" the Facility and cease using the Days Inn marks. (Mem. in Supp. of Mot. for Default J. and Damages Against Defs. ("Pl. Mem.") Ex. E.)

Exhibit failed to timely pay any damages or Recurring Fees as required by the License Agreement. (Krug Aff. ¶ 25.) Moreover, despite notification to cease and desist, Exhibit has continued to use the Days Inn marks without authorization to induce the traveling public to rent guest rooms through, among other things, its failure to remove Days Inn signage in and around the Facility. (Krug Aff. ¶¶ 22, 23, 26.) On December 20, 2007, an inspection showed that Exhibit failed to completely de-identify the Facility and failed to remove exterior signage advertising the Facility as a Days Inn guest lodging facility. (Krug Aff. ¶ 27.) Two additional post termination inspections conducted on June 19, 2008, and October 31, 2008, indicated that Exhibit continues to misuse the Days Inn marks. (Krug Aff. ¶¶ 28, 29.) Exhibit has failed to completely remove the exterior signage, and instead replaced "Days" with "Huntington." (Krug Aff. ¶¶ 28, 29.) Both the sunburst image and "Inn" of the Days Inn sign remain. (Krug Aff. ¶¶ 28, 29.)[2]

Since DIW filed suit, neither Defendant has filed an answer or otherwise responded in the time period allotted in Federal Rule of Civil Procedure 12(a)(1)(a).

---

[2] At the December 23, 2008, hearing it was revealed that the Defendants recently conformed all the signage and are no longer in violation of the License Agreement concerning that issue.

## V. CONCLUSIONS OF LAW

Based on the above-stated Findings of Fact, the undersigned Magistrate Judge makes the following Conclusions of Law.

*A. DIW Is Entitled to Default Judgment as to Liability Against the Defendants*

Pursuant to Federal Rule of Civil Procedure 55(a), Defendants Exhibit and Shaikh are in default based on their failure to answer or otherwise respond to DIW's complaint in the time prescribed by Federal Rule of Civil Procedure 12(a)(1)(A). The record reflects that DIW effectuated service of process on the Defendants, and that the Clerk subsequently entered a default. (Docket ## 6, 7, 8, 11, 13.) The Defendants have had adequate notice of the complaint but have chosen not to respond. Accordingly, because the Defendants are in default, all allegations in DIW's Verified Complaint against Exhibit and Shaikh are deemed admitted.

1. Exhibit Is Liable for Its Breach of the License Agreement.

As previously discussed, Exhibit unilaterally terminated the License Agreement on October 31, 2007, just a couple of years after its formation in 2005, although Exhibit was obligated to operate the Days Inn facility for fifteen years under Section 5 of the License Agreement. As a consequence of Exhibit's premature termination of the License Agreement, the Defendants are liable for damages under Section 4 of the Indiana Services Addendum, Section 12.1 of the License Agreement, and Section 13 of the Services Addendum. Exhibit further breached the License Agreement in failing to make certain periodic payments to DIW for the Recurring Fees, as required under Section 7 and Schedule C the License Agreement.

2. Exhibit Is Liable for Violations of the Lanham Act.

DIW has also established trademark infringements in violation of the Lanham Act, 15

U.S.C. §§ 1114(1)(a) and 1125(a). Section 1114(1)(a) provides:

> Any person who shall, without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . .

15 U.S.C.A. § 1114(1)(a). DIW contends that Exhibit violated this provision because it "marketed, promoted, and rented, and continues to market, promote, and rent rooms at the Facility through the unauthorized use of the Days marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers[.]" (Verified Compl. ¶ 42.)

DIW further alleges violations of Section 1125(a), which provides in pertinent part:

> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation . . . or as to the origin, sponsorship, or approval of . . . goods, services, or commercial activities . . . shall be liable in a civil action . . . .

15 U.S.C. § 1125(a). DIW contends that Exhibit acted in violation of this provision "in marketing, promoting, and renting rooms at the Facility, through and with the Days marks[.]" (Verified Compl. ¶ 44.) DIW avers that these acts constitute "a false designation of origin; a false and misleading description of fact; and/or a false and misleading representation of fact that caused and are likely to continue to cause" confusion, mistake, or deception concerning the affiliation of Exhibit's Facility with DIW, and to cause confusion, mistake, or deception that DIW sponsors or approves of Exhibit's guest lodging services. (Verified Compl. ¶ 44.)

Thus, DIW asserts that Exhibit's continued use of the Days Inn marks following the

8

termination of the License Agreement constitutes trademark infringement in violation of the Lanham Act. "For a trademark infringement claim, a plaintiff is required to establish that: (1) 'his mark is entitled to protection,' and (2) 'there is a likelihood of confusion between [the plaintiff's] mark and [the defendant's] mark.'" *Days Inns Worldwide, Inc. v. Lincoln Park Hotels, Inc.*, 500 F. Supp. 2d 770, 774 (N.D. Ill. 2007) (quoting *Sullivan v. CBS Corp.*, 385 F.3d 772, 775-76 (7th Cir. 2004)).

DIW's complaint sets forth facts establishing that its marks are entitled to protection. (*See* Verified Compl. ¶¶ 7-15 (alleging that the Days Inn marks are on the principal register of the United States Patent and Trademark Office, and that these marks have been continuously used since the date of registration and remain in full force and effect pursuant to 15 U.S.C. § 1065).) *See also* 15 U.S.C. § 1057(b) (providing that certificate of registration of a mark upon the principal register is prima facie evidence of the validity of the registered mark). With respect to the likelihood of confusion determination, "a court should consider factors such as: '(1) the similarity of the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiff.'" *Lincoln Park Hotels, Inc.*, 500 F. Supp. 2d at 774 (quoting *Sullivan*, 385 F.3d at 776).

DIW has established that following the termination of the License Agreement, Exhibit continued to misuse the Days Inn marks. The December 2007 inspection revealed that Exhibit failed to completely de-identify the Facility and remove exterior signage advertising the Facility as a Days Inn. (Pl. Mem. Ex. F.) The June and October 2008 inspections showed that Exhibit

9

continued to misuse the marks, simply replacing "Days" with "Huntington" on the exterior sign, leaving intact both the sunburst image and the word "Inn." (Pl. Mem. Exs. G, H.) Thus, Exhibit's marks are not merely similar; it was for a time using *the same* Days Inn marks, later only changing one word while maintaining the rest of the sign, including the Days Inn sunburst symbol. "The likelihood of confusion exists as a matter of law if a licensee continues to use marks owned by the licensor after termination of the license." *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F. Supp. 2d 914, 922 (C.D. Ill. 2000) (citing *Burger King v. Mason*, 710 F.2d 1480, 1492-93 (11th Cir. 1983)); *see also Ramada Franchise Sys., Inc. v. Royal Vale Hospitality of Cincinnati, Inc.*, No. 02 C 1941, 2005 WL 435263, at *15 (N.D. Ill. Feb. 16, 2005) (collecting cases).

Furthermore, Exhibit has used these marks in operation of the hotel, and therefore is using them in the same manner and to provide the same service as DIW's franchises. As the verified complaint alleges, the Days Inn marks are indisputably famous, and thus the strength of the marks weighs in DIW's favor. In short, DIW has shown a strong likelihood of confusion between Days Inns marks and those Exhibit uses at its inn, and thus the Court should find Exhibit liable for its misuse of the Days Inn marks.

3.  <u>Shaikh Is Liable Under the Guaranty.</u>

It is also clear that under the terms of the Guaranty, Shaikh is liable to DIW for Exhibit's obligations under the License Agreement. Under the Guaranty's terms, Shaikh agreed that upon a default of the License Agreement, he would "immediately make each payment and perform or cause Licensee to perform, each unpaid or unperformed obligation of Licensee under the [License] Agreement." (*See* Pl. Mem. Ex. D, ¶ 17.) He also agreed to pay the costs, including

reasonable attorneys' fees, incurred by DIW in enforcing its rights or remedies under the Guaranty or the License Agreement. (*See* Pl. Mem. Ex. D, ¶ 18.) Consequently, Shaikh, as a guarantor for Exhibit, is personally liable for Exhibit's obligations under the License Agreement, and as discussed *supra*, Exhibit has failed to meet its obligations. *See, e.g., Ramada Franchise Sys., Inc. v. Shri Ohm Corp.*, No. 04-3248, 2006 WL 51183, at *2 (C.D. Ill. Jan. 10, 2006). Thus, the default judgment should be entered against Shaikh as well.

Accordingly, the Court should find that DIW has established that the evidence of record supports the factual allegations in its complaint, and enter a default judgment against the Defendants on DIW's claims.

### B. DIW Is Entitled to Damages

DIW seeks recurring fees, actual damages, pre-judgment and post-judgment interest on the recurring fees and actual damages, damages under the Lanham Act, and attorneys' fees and costs. The Court should award monetary damages in favor of DIW and against Defendant Exhibit and its guarantor, Shaikh, jointly and severally, as set forth below.

1. <u>Recurring Fees</u>

Under the umbrella of Recurring Fees, Section 7 of the License Agreement requires the Defendants to pay royalties, service assessments, taxes, interest, reservation system user fees, and annual conference fees, among other fees. (Pl. Mem. Ex. A, ¶ 7.) The Defendants have not paid the Recurring Fees that were outstanding at the time of the License Agreement's termination. DIW now seeks the past due amount of $32,282.91, which includes interest through November 4, 2008. DIW has attached an itemized statement of the Recurring Fees to the Krug Affidavit, and has therefore adequately demonstrated the amount that the Defendants owe,

jointly and severally. (Krug Aff. ¶ 31, Ex. 1.1.)

2. <u>Pre-judgment Interest on the Recurring Fees</u>

Section 7.3 of the License Agreement applies interest on past-due Recurring Fees "at the rate of 1.5 % per month or the maximum permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." (Pl. Mem. Ex. A, ¶ 7.3.) Accordingly, DIW is entitled to pre-judgment interest on the past due amount of Recurring Fees at the rate of 1.5 % per month (18 % per year), at the per diem rate of $15.92[3] from November 4, 2008, until the date a judgment is entered. As of February 3, 2009, the pre-judgment interest totaled $1,448.72. (Krug Supplemental Aff. ¶ 3.)

3. <u>Actual Damages</u>

Section 12.1 provides that in the event of termination, Exhibit will pay "an amount equal to the sum of accrued Royalties and Basic Service Charges during the immediately preceding 24 full calender months . . . ." (Pl. Mem. Ex. A, ¶ 12.1.) Paragraph 4 of the Indiana Addendum, however, obligates Exhibit to pay actual damages due to premature termination of the License Agreement until the end of the fifteen-year term.[4] (Pl. Mem. Ex. B.) Exhibit's premature

---

[3] The interest rate of 1.5 % per month is equal to a rate of 18 % per year. Eighteen percent of the past-due Recurring Fee amount, $32,282.91, is approximately $5,810.92. This amount divided by 365 days in a year equals approximately $15.92 per day.

[4] Paragraph 4 of the Indiana Addendum amends Section 12 of the License Agreement and provides as follows:

> Notwithstanding any such Termination, and in addition to your other obligations, or in the event of Termination, or cancellation of the License Agreement under any of the other provisions therein, you shall be, continue and remain liable to us for any and all damages which we have sustained or may sustain by reason of such default or defaults and the breach of the License Agreement on your part until the end of the Term.
>
> At the time of such Termination, you covenant to pay us within 10 days after demand compensation for all damages, losses, costs and expenses (including reasonable attorney's fees) incurred by us and/or amounts which would otherwise be payable for and during the remainder of the unexpired Term of the License Agreement but for such termination.

12

termination caused DIW to lose future revenues over the remainder of the fifteen years, and as a result, Exhibit is liable for damages to the end of the term.

To determine Defendants' liability through the end of the fifteen-year term, DIW calculated the gross revenues from the last twelve months that Exhibit reported its revenues. (Krug Supplemental Aff. ¶ 6.) During that period, DIW was entitled to Recurring Fees in the amount of $5,657.77, which is $15.50 per day. (Krug Supplemental Aff. ¶ 6.) Next, DIW multiplied that per diem rate by the approximate number of days left in the term, 4,475 ($15.50 x 4,475). (Krug Supplemental Aff. ¶ 7.) This amounts to $69,362.50[5] in actual damages (Krug Supplemental Aff. ¶ 8), the present value of which is calculated at $41,784.64 (*see* Krug Supplemental Aff. ¶ 9).

Moreover, Exhibit's premature termination resulted in damages under Section 13 of the Services Addendum. (Pl. Mem. Ex. C, ¶ 13.) Section 13(a) of the Services Addendum permits DIW to terminate the Services Addendum upon Exhibit's default.[6] (Pl. Mem. Ex. C, ¶ 13(a).) In that event, under Section 13(c) of the Services Addendum, Exhibit is obligated to pay $1,000 of liquidated damages. (Pl. Mem. Ex. C, ¶ 13(c).)

Accordingly, in sum, the Court should conclude that DIW is entitled to actual damages in the amount of $42,784.64 ($41,784.64 in actual damages from License Agreement plus $1,000 in damages from the Satellite Addendum) from the Defendants, jointly and severally.

---

(Pl. Mem. Ex. B, ¶ 4.)

[5] Although DIW's motion for default judgment requests actual damages under the License Agreement in the sum of $69,362.90 (*see* Pl. Mem. 10), the Krug Supplemental Affidavit calculates that the damages are actually $69,362.50, forty cents less than alleged in the motion. The Court will assume that the motion contains a typographical error and will be guided by the amount provided in the Krug Supplemental Affidavit.

[6] As discussed above, Exhibit defaulted by breaching the License Agreement in terminating it before the end of the term and failing to pay the required fees. (*See* Pl. Mem. Ex. A, ¶ 11.1.)

4. <u>Pre-judgment Interest on the Actual Damages</u>

DIW asserts that it is entitled to interest on the actual damages. Indeed, Section 12.1 of the License Agreement provides that Exhibit is obligated to pay interest on these damages, which are to be calculated under Section 7.3 of the License Agreement. (Pl. Mem. Ex. A, ¶ 12.1.) That provision explains that interest is calculated a rate of 1.5 % per month, as discussed *supra*. (Pl. Mem. Ex. A, ¶ 7.3.) Because the License Agreement provides for the interest that DIW requests, DIW is entitled to default judgment for interest on the actual damages at a rate of 1.5 % per month, or $21.10 per day, from November 10, 2007 (ten days following the License Agreement's termination (*see* Pl. Mem. Ex. B, ¶ 4)) through the date of judgment.[7]

5. <u>Damages Under the Lanham Act</u>

Under 15 U.S.C. § 1117(a), a prevailing plaintiff is entitled to recover "any damages sustained by the plaintiff[.]" 15 U.S.C. § 1117(a). In addition, the Court may use its discretion to assess damages for a sum greater than the infringement's actual damages, not to exceed three times that amount. 15 U.S.C. § 1117(a). DIW pursues damages under this statute in the amount of $6,057.72 for Exhibit's infringement through the period of October 31, 2007, the date of the License Agreement's termination, to October 31, 2008, the date of the last inspection. DIW further requests that these damages be trebled to $18,173.16 for willfully misusing the marks.

"Courts, including the Seventh Circuit, have indicated that using lost royalties as the proper measure of actual damages is appropriate under 15 U.S.C. § 1117(a)." *Royal Vale Hospitality of Cincinnati, Inc.*, 2005 WL 435263, at *16 (citing *Sands, Taylor & Wood v.*

---

[7] DIW asserted in its memorandum that it is entitled to per diem pre-judgment interest of $34.70. However, that contention is erroneous since it did not base that calculation on the present value of $42,784.64 (*i.e.*, 42,784.64 multiplied by 18 %, then divided by 365 days per year equals $21.10).

14

*Quaker Oats Co.*, 34 F.3d 1340, 1350 (7th Cir. 1994)); *see also Days Inns Worldwide, Inc. v. Mayu & Roshan, LLC,* No. 06-cv-1581 (PGS), 2007 WL 1674485, at *7 (D.N.J. June 9, 2007) (collecting cases). The Krug Affidavit explains how DIW arrived at the $6,057.72 sum, estimating the lost recurring fees during the period of infringement.

First, DIW acknowledges that without having the opportunity to do discovery, it cannot ascertain the amount of Exhibit's gross room revenue during the period of infringement, and therefore does not know precisely what Recurring Fees would have been due based on that revenue. (Krug Aff. ¶ 34.) However, DIW offers an estimate based on the average Recurring Fees that Exhibit reported in the past, from April 2005 to March 2007. (Krug Aff. ¶ 35.) During that period, Exhibit's average gross monthly income was $5,736.46. (Krug Aff. ¶ 35.) Under Section 7 and Schedule C of the License Agreement, 8.8% of that sum is due to DIW; therefore, Exhibit paid average Recurring Fees of $504.81 per month. (Krug Aff. ¶ 35.) DIW then uses that amount to estimate the fees that would have been paid on gross room revenue earned at the Facility during the period of infringement, from October 31, 2007, to October 31, 2008, multiplying $504.81 by the twelve months in the infringement period, arriving at the sum of $6,057.72. (Krug Aff. ¶ 36.) DIW's $6,057.72 figure, based upon an approximation of lost Recurring Fees, is a reasonable estimate of actual damages. *See Royal Vale Hospitality of Cincinnati, Inc.*, 2005 WL 435263, at *16 (employing a similar method to arrive at a figure for Lanham Act damages).

DIW requests that these damages be trebled, amounting to a sum of $18,173.16. (Krug Aff. ¶ 36.) Section 1117(a) gives the court discretion to enter judgment for a sum higher than the amount of actual damages, not to exceed three times the amount, depending on the

15

circumstances of the case. 15 U.S.C. 1117(a). Section 1117(b) provides, "In assessing damages under subsection (a) for any violation of section 1114(1)(a) of this title . . . , the court shall, unless the court finds extenuating circumstances, enter judgment for three times such . . . damages, whichever amount is greater, together with a reasonable attorney's fee . . . ." 15 U.S.C. § 1117(b). For this to apply, however, the infringement must be intentional or at least willfully blind. *Id.*; *see also Royal Vale Hospitality of Cincinnati, Inc.*, 2005 WL 435263, at *17 (denying treble damages where there was no willfulness); *Mayu & Roshan, LLC*, 2007 WL 1674485, at *8 (citing *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 588-90 (7th Cir. 1989)).

The record reflects that Exhibit used the Days Inn marks for at least twelve months after the License Agreement was terminated. The License Agreement clearly precludes use of the marks after termination (Pl. Mem. Ex. A, ¶ 13.1), and DIW also informed Exhibit in the November 7, 2007, letter about Exhibit's post termination duties to completely "de-identify" the Facility within ten days of termination (Pl. Mem. Ex. E). Although Exhibit was on notice of the trademark infringement, it nevertheless proceeded to use the marks, thus acting intentionally (or at least willfully blindly) in its continued misuse of the Days Inn marks. *See, e.g., Mayu & Roshan, LLC*, 2007 WL 1674485, at *8; *Ramada Worldwide, Inc., v. Jay-Dharma, LLC*, No. 05-3311 (JCL), 2006 WL 3041080, at *8 (D.N.J. Oct. 26, 2006); *Travelodge Hotels, Inc. v. Elkins Motel Assocs., Inc.*, No. 03-799(WHW), 2005 WL 2656676, at *12 (D.N.J. Oct. 18, 2005). Furthermore, on this record, there is no discernable "extenuating circumstance[]," 15 U.S.C. § 1117(b), that would preclude the imposition of treble damages in this instance.

Because Exhibit possessed the requisite intent to infringe on DIW's trademark rights, the undersigned Magistrate Judge recommends that the Court award Lanham Act trebled damages

for infringement from October 31, 2007 (the date of termination of the License Agreement) through at least October 31, 2008, in the amount of $18,173.16.

      6.     Attorney Fees and Costs

DIW also requests that the Court award attorney fees. Section 17.4 of the License Agreement requires that the non-prevailing party pay all costs and expenses, including reasonable attorneys' fees, that the prevailing party incurred in enforcing the License Agreement or in collecting amounts owed. (Pl. Mem. Ex. A, ¶ 17.4.) If the Court enters a default judgment against the Defendants, then it should also find the Defendants liable for DIW's reasonable attorney fees.

The undersigned Magistrate Judge has examined Attorney Hanson's Affidavit in support of DIW's claim for recovery of attorneys' fees and the detailed billing records attached. (Hanson Aff. ¶ 11, Ex. 2.1.) Upon review, both the rate and the hours charged to prosecute this action appear reasonable. *See generally Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The time involved is reasonable, given the examination required of the detailed franchise agreement, the need to substantiate the claims advanced in the complaint, and the time and effort necessary to calculate the damages. As a consequence, attorney fees should be granted in the requested amount of $19,152.80.

The Hanson Affidavit also indicates that DIW has incurred costs in the amount of $497.85, and attached are invoices supporting this allegation. (Hanson Aff. ¶ 12, Ex. 2.1.) The requested amount includes filing fees, reproduction expenses, telephone charges, service of process fees, and postage and overnight courier expenses. (Hanson Aff. ¶ 12.) Accordingly, the undersigned Magistrate Judge also recommends that the Court award costs in the amount of

$497.85.

## VI.  CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge recommends that the Court enter a default judgment against the Defendants, Exhibit Chicago, Inc., and its guarantor, Khursheed Shaikh, and that monetary damages be entered in favor of the Plaintiff and against both Defendants, jointly and severally, as follows:

(a) Recurring Fees and interest due and owing in the amount of Thirty-Two Thousand, Two Hundred Eighty-Two Dollars and Ninety-One Cents ($32,282.91), which includes interest through November 4, 2008;

(b) Pre-judgment interest on the Recurring Fees at the rate of 1.5 % per month (18 % per year) at the per diem rate of $15.92 from November 4, 2008, until the date a judgment is entered;

(c) Actual damages in the amount of Forty-Two Thousand, Seven Hundred Eighty-Four Dollars and Sixty-Four Cents ($42,784.64);

(d) Pre-judgment interest on the $42,784.64 in actual damages at the rate of 1.5 % per month (18 % per annum) at the per diem rate of $21.10 from November 10, 2007, until the date a judgment is entered;

(e) Lanham Act trebled damages for infringement from October 31, 2007 (the date of termination of the License Agreement), through at least October 31, 2008, in the amount of Eighteen Thousand, One Hundred Seventy-Three Dollars and Sixteen Cents ($18,173.16);

(f) Attorneys' fees in the amount of Nineteen Thousand, One Hundred Fifty-Two

    Dollars and Eighty Cents ($19,152.80);

 (g) Costs in the amount of Four Hundred Ninety-Seven Dollars and Eight-Five Cents ($497.85).

The Clerk is directed to send a copy of this Report and Recommendation to counsel for DIW and to the Defendants at their last known addresses. NOTICE IS HEREBY GIVEN that within ten days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995); *Egert v. Conn. Gen. Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir. 1990).

 SO ORDERED.

 Enter for this 12th day of February, 2009.

              /S/ Roger B. Cosbey
              Roger B. Cosbey,
              United States Magistrate Judge